PUETZ v. BRANSFORD.

*(Circuit Court, E. D. Missouri, E. D.    May 16, 1887.)*

1. PATENTS FOR INVENTIONS—ASSIGNMENTS—ONE-THIRD INTEREST.

An assignment of "one-third of the full and exclusive right to the invention, as fully set forth and described" in a specification about to be filed, conveys a right to a one-third interest in all patentable devices described and claimed in such specification, and in all patents which may be obtained therefor.

2. SAME.

Where alterations which do not require invention are made in one of the devices described in the specification referred to in an assignment, and a separate patent is obtained therefor, such alterations do not withdraw such patent from the operation of the assignment.

3. SAME—PLUG-TOBACCO MACHINES.

The charger described in patent No. 330,850, for a plug-tobacco machine, and claimed in the third claim thereof, is an entirely different piece of mechanism from the one described in the original specification for patent No. 330,849.

4. SAME—INVENTION—EQUIVALENTS.

There is no invention in substituting a compound lever for a simple one, in order to gain an increase of power.

5. SAME.

Where a stop mechanism, consisting in part of a spring rod operated by a lever, and working in and out of a slot or hole in a cog-wheel, had been used, *held,* that there was no invention in cutting an incline or taper into one side of the slot or hole in the wheel, so that the end of the rod would be forced up the incline, and out of the slot, by the forward revolution of the wheel, after the spring rod had been only partially withdrawn by the action of the lever.

6. SAME—PLEADING—PARTNERSHIP—LICENSE.

The question of whether or not a defendant has an interest in a patent sued on, by virtue of a partnership agreement, or a license to use the invention, will not be considered, unless specifically raised by the pleadings. It is not sufficient to simply set up want of equity in the bill.

In Equity.

This is a suit for the infringement of the third claim of letters patent No. 330,850, granted to Tillman Puetz, November 17, 1885, for an improved plug-tobacco machine. The defendant filed an answer, admitting infringement, but alleging that it would be inequitable to enjoin him from making, using, and selling machines embodying the device described in the third claim of said patent, for the reason that it is for substantially the same invention covered by the eighth claim originally contained in the application, upon which letters patent No. 330,849 were granted to the complainant, and that a one-third interest in the invention described in said application had been assigned to him; and that, furthermore, he was a joint inventor with complainant of the device in question. The defendant also filed a cross-bill, asking that the complainant be compelled to assign to him an undivided one-third interest in the invention covered by letters patent No. 330,851, granted to the complainant, November 17, 1885, for an automatic stop, and that letters patent No. 330,850 be declared void.

The third claim of letters patent No. 330,851 is as follows:

"The combination, with a frame and charger operating mechanism, of a charger consisting of a front part having side pieces secured thereto, a rear part fitting between the side pieces, cross-bar secured to the side pieces behind the rear part, cross-head in rear of the cross-bar rods, connecting the cross-head to the rear."

The description of the charger mechanism in the original application for letters patent No. 330,849 is as follows:

"P, $P^1$, represents the charger by which the mould is filled. It is made in two parts, connected by the rods, P, outside of side pieces, A, of the table of the machine. It is operated by cam, T, on shaft, D, * * * that bear against the friction rollers, M, on a yoke, U, through which the shaft passes, and which is connected by a rod, $U^2$, to an arrow, $V^1$, on a rock-shaft, V, journaled to the frame, A, and provided with a cog segment; $V^2$, that engages a pinion, $V^3$, secured to the shaft, $V^4$, and meshing into a rack, $V^5$, filling in an opening in a table, $A^1$. The rack has an upward projection, $V^6$, secured to part P of the charger by bolts, $V^7$, that preferably extend the entire length of this part of the charger as shown in figures, 6 and 7, for the purpose of strengthening it. Secured to this projection, $V^6$, by the bolts, $V^7$, or other suitable means, is a cross-head or plate, $V^8$, extending out through the slots, $A^5$, and the ends are perforated to receive the part, $P^2$, on which it moves as the charger is operated, the movements in both directions being limited by the nuts or projections, $P^3$, $P^4$, on the rods. When the charger is operated through the means of its described connection with the shaft; the part, P, is moved in the distance between the nuts, $P^3$, $P^4$. Before the part, $P^1$, commences to move on the plate, $V^8$, slides or moves on the rods until it comes to the nuts, $P^4$, and then it carries the rods forward with it, and also the part, $P^1$, of the charger as it is secured to the rods, as shown at $P^5$. The rods are supported by and slide in perforated lugs, $A^3$, on the side pieces, $A^5$. The object of having this additional movement on the part, P, of the charger is to compress the tobacco horizontally," etc.

The eighth claim of said application was as follows:

"In a plug-tobacco machine, the charger made in two parts, one part adapted to have more movement than the other, to compress the tobacco, as specified."

The other material facts are sufficiently stated in the opinions of the court.

*George K. Knight*, for complainant.

*Paul Bakewell*, for defendant.

THAYER, J. This litigation in both of its branches affects three letters patent issued to the complainant, November 17, 1885, and numbered, respectively, 330,849, 330,850, and 330,851. For convenience, they will be hereafter spoken of as patents 49, 50, and 51. There is a bill and also a cross-bill on file.

Complainant seeks by his bill to restrain an infringement of the third claim of patent No. 50. The defendant by his answer admits that he has made two machines which embody the same device covered by the third claim of letters patent No. 50, but he alleges that it would be inequitable (for reasons hereinafter stated) to enjoin him from making, using, and selling the device described in the third claim of said patent. He further avers that he was a joint inventor with the complainant of

the device in question, and, by way of cross-bill, he asks that the complainant be compelled to assign to him an undivided one-third interest in the invention covered by letters patent No. 51, and for a decree adjudging that letters patent No. 50, on which complainant's bill is based, are void.

It will be more convenient to dispose of defendant's cross-bill before considering any of the questions raised by the bill and answer. Referring, then, to that branch of the litigation, it will suffice to say that complainant first applied for a patent on a plug-tobacco machine of which he claimed to be the inventor on December 20, 1884. A few weeks previous thereto he had formed a partnership with the defendant and one Valentine Kerner. With respect to the nature and scope of the partnership, it is unnecessary to say more at present than that the partnership agreement evidently contemplated an assignment to defendant and to Kerner, each of an undivided one-third interest in the invention subsequently described in complainant's specifications for a patent filed on December 20, 1884. Accordingly, when an application for the patent was drawn, complainant, on the same day, executed an assignment, whereby he transferred to each of his co-partners "one-third of the full and exclusive right to the invention, as fully set forth and described in the specifications" accompanying complainant's application for the same.

Without going further into details of construction, (as the machine described by the specifications was somewhat complicated,) it may be stated generally that it was a machine designed to compress loose leaf tobacco into plugs of any desired size, and that it consisted of three distinct parts,—that is to say, of heavy plungers, with appropriate machinery for raising and lowering the same, which were designed to compress leaf tobacco into plugs; of a "charger or feeder," with appropriate mechanism to move the charger backward and forward, which was designed to receive loose leaf tobacco, and carry it forward under the plungers;—and, thirdly, of what has been termed a "clutch and automatic stop mechanism," which was designed to throw the machine in and out of gear at intervals as the charger was being filled. The three parts of the machine last mentioned were fully described in the specifications filed in the patent-office on December 20, 1884, to which the assignment in favor of the defendant related, and the several parts were substantially claimed by the complainant as his inventions. But, inasmuch as the "clutch and automatic stop mechanism" might be applied to other machines besides the plug-tobacco machine described in complainant's specifications, it was held, under a rule of the patent-office, that the "clutch and stop mechanism" claimed must be made the subject-matter of a separate patent, and could not be covered by a patent which also covered the devices shown in other parts of the machine. Complainant accordingly withdrew from his application filed on December 20, 1884, the claim therein made with reference to the "clutch and stop mechanism," and eventually, on November 17, 1885, obtained letters patent No. 49, covering the residue of his claims; that is to say,

covering substantially the "plungers and plunger mechanism" of his machine, and the "charger and charger mechanism." Prior, however, to the grant of letters patent No. 49, complainant made an application for a separate patent on a "clutch and automatic stop mechanism," which varied only in *two* respects from a similar mechanism described and claimed in his original application on December 20, 1884. On this latter application, covering a clutch and stop mechanism *only*, he obtained letters patent No. 51, also bearing date November 17, 1885; which letters patent he now claims as his exclusive property.

The foregoing facts are practically conceded by both parties. Now, inasmuch as complainant's assignment of date December 16, 1884, conveyed to defendant a one-third interest in the invention as fully described in the specifications filed by complainant in the patent-office on December 20, 1884, the assignment must be construed as intended to cover all of the inventions described in such specifications, (and not merely a part of them;) and more especially should the assignment be construed as covering such devices shown by said specifications as complainant at that time *claimed to be patentable.* The fact that a rule of the patent-office prevented the issuance of a single patent covering all of the novel devices disclosed and claimed by the original specifications for patent No. 49 cannot be allowed to restrict the effect of the assignment to a conveyance merely of a one-third interest in the invention covered by the patent as ultimately issued. Evidently the parties to the assignment did not intend that it should have such limited operation. That instrument was intended to embrace all of the patentable devices shown, and especially those claimed by the specifications therein referred to, and it was manifestly drawn upon the assumption that said devices could be covered by one patent. There can be no doubt, I think, that two independent applications would have been filed on December 20, 1884, and that the assignment would have been drawn so as to cover both sets of specifications, if the parties had understood that all of the devices could not be covered by a single patent.

In view of the construction given to the assignment, it is manifest that defendant is equitably entitled to a one-third interest in patent 51, covering "a clutch and automatic stop mechanism," unless that mechanism, as described in the specifications of patent 51, contains such novel features (not shown by the original specifications of patent 49) as would entitle complainant to a patent as for an improvement on the mechanism as at first designed; and, even if such novel features *are* shown by the last application for "a clutch and stop mechanism," it would be doubtful, under the circumstances of this case, whether complainant could in equity be esteemed the sole owner of the invention covered by patent 51, inasmuch as an interest in a substantial part of the invention had been assigned to the defendant as early as December 16, 1884. It is unnecessary, however, to pass judgment on the point last suggested, as the court is clearly of the opinion, based upon its own observation of the mechanism as well as upon the expert testimony, that no novel features are shown in the "clutch and stop mechanism" described in

patent No. 51 which were not disclosed in the original specifications filed December 20, 1884.

The original specifications and drawings for patent No. 49 show a lever fulcrummed to the frame of the machine, and attached near the fulcrum to a sliding clutch on the drive-shaft, and attached at another point to the end of a spring rod. This lever was designed for no other service than to throw the machine into gear when it was started. A pull at the end of the lever would force the sliding clutch into engagement with a driving pulley on the drive-shaft, and at the same time withdraw the end of the spring rod from a slot or hole in the web of a large cog-wheel, and permit it to revolve. The specifications and drawings attached to patent No. 51 show that the patentee (for greater convenience in handling, and for the purpose of giving increased power to the lever designed to throw the machine into gear) simply added an additional arm or short lever, and changed the shape of the original lever by bending the long arm. In other words, the sum total of this particular alteration in the clutch and stop mechanism consisted in the substitution of a compound lever for what was before a simple lever. The other alteration in the original device was even less important. It consisted in cutting an incline or "taper" into one side of the slot or hole in the cog-wheel, so that the end of the spring rod would be forced up the incline, and out of the slot, by the forward revolution of the wheel, after the spring rod had been only partially withdrawn by the action of the lever. In my judgment, neither of those alterations called for an exercise of the inventive faculty. Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. Rep. 225; Thompson v. Boisselier, 114 U. S. 11, 5 Sup. Ct. Rep. 1042; Hollister v. Benedict & B. Manuf'g Co., 113 U. S. 59, 5 Sup. Ct. Rep. 717.

The idea of substituting a compound lever in place of a simple lever, for the purpose of gaining increased power, and under the circumstances shown, would suggest itself readily to the mind of any skilled machinist as soon as the necessity for increased power revealed itself; and, with respect to the incline cut into one side of the hole in the cog-wheel to permit the rod to slide out and the wheel to revolve, it may be said that the evidence in the case shows that that particular device, or rather the device of beveling one side of the hole for the same purpose, suggested itself to the patentee without any apparent study the first time the clutch and stop mechanism as originally conceived was put to a practical test. My conclusion is therefore that the clutch and automatic stop mechanism shown by patent No. 51 is practically the same in all its essential features as the similar mechanism shown and claimed in the original specifications for patent No. 49; that a one-third interest in that invention was assigned to the defendant; and that he is entitled to a decree enforcing a conveyance of a one-third interest in patent No. 51.

The cross-bill, as before stated, also prays for a decree declaring that letters patent No. 50 are void. This prayer is based upon an allegation in the cross-bill that complainant was not the sole inventor of the device covered by the third claim of said patent; that said device is in fact the product of the combined inventive skill of the complainant and defend-

ant; and that the former made false representations to the patent-office to obtain a patent therefor in his own name, and as *sole* inventor. It will suffice to say that the evidence does not satisfy me that this charge is well founded. The testimony does not show to my satisfaction that defendant took any such part in the creation of the device as would constitute him, in any proper sense of the term, a joint inventor with the complainant. The patent itself is *prima facie* evidence that complainant was the sole inventor of the device covered by letters patent No. 50, and the evidence in this case tends to confirm the presumption, rather than to overthrow it. The last prayer of the cross-bill must accordingly be denied.

What has been said in treating of the cross-bill, with respect to defendant's claim that he was a joint inventor with the complainant of the device covered by the third claim of patent No. 50, effectually disposes of a plea of the same character contained in the defendant's answer by way of defense to the bill.

It is somewhat difficult to determine from the answer the precise nature of the other defense or defenses intended to be made to complainant's bill. In formulating defenses, as required by the nineteenth rule of this court, defendant contents himself with the general statement "that it would be inequitable, under all the circumstances of the case, to enjoin him from making and selling the device described in the third claim of complainant's letters patent No. 50," and that complainant "is not entitled to equitable relief because he has not come into equity with clean hands." There is no plea to the effect that defendant has acquired the right to use and sell the device covered by the third claim of patent No. 50 by a grant *from the patentee*, or under and by virtue of any partnership agreement existing between the parties to the bill. The fact that such partnership did exist is not even mentioned in the answer to the bill, although frequent reference to such an agreement has been made in the course of the argument, as though it in some manner affected the proper settlement of the controversy. It follows, therefore, that the court cannot consider any possible rights which defendant may have acquired to make, sell, or use the device covered by the third claim of patent No. 50, under the partnership agreement between the parties, the nature of which agreement is not stated in the answer, or even referred to.

I may furthermore add, in this connection, that the validity of patent No. 50 is not called in question by the answer, nor is complainant's title thereto challenged in any other manner than by the plea heretofore considered and overruled, to the effect that defendant was a joint inventor of one of the devices covered by the patent. So far as the court can see, the claim now urged, that complainant has no standing in equity to dispute defendant's right to make, use, and vend the device covered by the third claim of letters patent No. 50, rests wholly upon certain averments in the answer to the effect that complainant withdrew the claim covering the "clutch and stop mechanism" from the original specifications of patent No. 49, and thereafter obtained patent No. 51 on

the same device in his own name, and claimed it as his exclusive property, for the *fraudulent purpose of depriving the defendant of an interest in that invention* to which he had become entitled by virtue of the assignment of December 16, 1884. This is apparently the substance of the charge against complainant which is supposed to preclude him from all right of redress for an admitted infringement by defendant of the third claim of patent No. 50. Now, without stopping to determine whether complainant's acts in the matter referred to were inspired by an *actual* fraudulent intent, it is sufficient to say that it is not perceived how complainant's conduct, with reference to obtaining letters patent Nos. 49 and 51, can estop him from enforcing his rights under letters patent No. 50, which letters patent, for the purposes of this decision, must be regarded as the sole property of complainant, and as in all respects valid. Even if it appeared that complainant acted in bad faith towards the defendant in the matter of obtaining a patent in his own name on the "clutch and stop mechanism," how would that fact operate to destroy his rights under patent No. 50, as to which no fraud is charged in the method of obtaining the same? It must be borne in mind that complainant is not seeking by his bill to enforce any claims under letters patent No. 51, to which the charge of fraud and bad faith solely relates. He is simply asking an injunction against an admitted infringement of the third claim of patent No. 50, which covers a form of "charger" that was invented by him *after* the application for patent No. 49 was filed. And, moreover, it is not claimed (at least by the answer) that the particular "charger device" covered by letters patent No. 50 lacks novelty, or that it was described in the original specifications filed on December 20, 1884.

In deciding the case, the court is, of course, confined to those issues which have been raised by the pleadings. It may be that the firm of Bransford & Puetz became equitably entitled to patent No. 50, as part of the firm assets, by virtue of the partnership agreement, or that a license to the defendant to use the device covered by the third claim of said patent might be inferred from the manner in which the partnership business was conducted for a period of several months. But defendant has not pleaded *property in the invention acquired in virtue of the partnership agreement*, or a license to use the invention, or any facts which estop the complainant from asserting an exclusive right to make and sell the device covered by the third claim of the patent in question. The court is accordingly precluded from passing judgment on such defenses, although such defenses have been in effect made in the course of the argument.

A decree will be entered in complainant's favor on the bill in accordance with the above views.

---

(May 20, 1887.)

THAYER, J. I have examined defendant's motion for a rehearing in this case fully. Defendant insists that his answer to the bill avers, and that the proof supports the allegation, that complainant concealed from the defendant the fact that the broad eighth claim contained in the

original application for patent No. 49, covering a charger made in two parts had been withdrawn before patent No. 49 issued, and inasmuch as defendant was the assignee of a one-third interest in the invention shown by that application, and inasmuch as complainant thereafter obtained patent No. 50 in his own name, covering a similar device to that covered by said eighth claim, defendant urges that complainant is estopped in this proceeding from enforcing the third claim of patent No. 50, covering the charger, as against *this* defendant. This is the allegation, and the proof said to support it, that the court is supposed to have overlooked when it originally decided the case. Now, it may be conceded, for the purpose of this decision, that the defendant has a perfect right to manufacture a machine containing all the devices shown by the original application for patent No. 49. It may be conceded, furthermore, that if the device covered by the third claim of patent No. 50 is substantially the same as the device shown by the original eighth claim in the application for patent No. 49, that he has a right to make and vend chargers constructed according to the specifications of patent No. 50. But the court originally held that the charger, as described in patent No. 50, is substantially a different device from that shown in the drawings and specifications of patent No. 49; that it contains features of novelty, and is not the same invention as that disclosed in the original application of patent No. 49; and in so holding and so ruling the court is of the opinion that it substantially answered the point that is now raised by the motion for a rehearing.

If it should be conceded, for the purposes of this decision, that there was an intentional concealment of the fact of the withdrawal of the broad eighth claim contained in the specifications of patent No. 49, I am unable to see how such concealment operated to harm the defendant. And unless some concealment was practiced which operated to defendant's disadvantage, and was a wrongful act, considering the relation of the parties, of course the complainant cannot be estopped from asserting his rights under patent No. 50. The evidence in this case shows that the eighth claim of patent No. 49 was not voluntarily withdrawn. On the contrary, it appears that the claim was withdrawn because the patent-office insisted upon its being withdrawn, and because the office refused to issue a patent covering such a broad claim as the eighth claim in the original specifications. The defendant does not pretend, and the court will not assume, that if he had been advised of the objection to the claim, that he could have induced the patent-office to make any different ruling thereon.

Furthermore, the evidence is not sufficient to warrant the inference that the complainant withdrew that claim covering the charger for any fraudulent purpose. The evidence rather tends to show that complainant would have been very glad to obtain a patent covering the broad eighth claim, and that, in point of fact, he did all that was in his power to obtain a patent embracing that claim.

Now, it may be that the defendant in this case was not aware of the withdrawal of the claim until a few days before patent No. 49 was issued.

I am rather inclined to think that he was not aware of it.   He does not seem to have paid much attention to the progress of the application for that patent, and it appears that he even made some objections to the expenditures that were being made in the way of experiments, with a view of improvements upon the machine.   He does not seem to have visited the office of the persons who were soliciting this patent more than twice in seven or eight months, and the evidence, as I take it, rather tends to show that he was satisfied with the form of charger that was described in the original specifications for patent No. 49, and that he did not pay much attention to, or take much interest in, complainant's efforts to improve the device.   But, be this as it may, I think the point of the motion is answered by the fact found, that the charger described in patent No. 50 is an entirely different piece of mechanism from that described in the original specifications for patent No. 49, and that it was invented subsequent to the application for the original patent, and that it was solely the invention of the complainant.   I cannot find any testimony in the record that will suffice to estop the complainant from insisting upon his rights under the patent No. 50, even as against this defendant, unless it be that the partnership between the two parties was of such character that, under and by virtue of the same, the defendant became entitled to all the improvements that were made on the machine as originally conceived during the pendency of the partnership.   As I stated the other day in deciding the case, that defense is not pleaded, and the court can take no notice of it.

The motion for a rehearing will therefore be denied.